UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **CIVIL MINUTES - GENERAL** | | JS-6 |
| Case No. | CV 11-4031 CAS(PJWx) | Date | June 27, 2011 |
| Title | ZACHARY MEDOW; ET AL. v. TOWER INSURANCE COMPANY OF NEW YORK; ET AL. |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | SANDRA BECCERA | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Travis Corby | | James Nielsen |

**Proceedings:**  MOTION TO REMAND (filed 05/23/11)

DKS CLAIMS SERVICE'S MOTION TO DISMISS (filed 05/23/11)

TOWER'S MOTION AND MOTION TO COMPEL APPRAISAL [9 U.S.C. § 4] AND TO DISMISS [F.R. CIV. P. RULE 12(b)(6) (filed 05/23/11)

## I.  INTRODUCTION

On April 1, 2011, plaintiffs Zachary Medow and Loreni Delgado (collectively, "plaintiffs") filed the instant action in the Los Angeles County Superior Court against Tower Insurance Company of New York; Tower Group Companies (collectively, "Tower"); DKS Claim Service ("DKS"); and Does 1 to 10, inclusive (collectively, "defendants").[1] In their complaint, plaintiffs allege claims for: (1) breach of the duty of good faith and fair dealing against Tower; (2) breach of contract against Tower; (3) fraud against all defendants; and (4) conspiracy to defraud against all defendants.

On May 11, 2011, defendants removed the action to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), claiming that DKS was fraudulently joined.  Notice of Removal at 3.

---

[1] Tower alleges that 'Tower Group Companies' is a trade name and not a separate entity from Tower Insurance Company of New York.  Notice of Removal at 2.  The Court will hereafter refer to both entities collectively as "Tower."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 11-4031 CAS(PJWx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | ZACHARY MEDOW; ET AL. v. TOWER INSURANCE COMPANY OF NEW YORK; ET AL. | | |

On May 23, 2011, plaintiffs filed a motion to remand the case to the Los Angeles Superior Court, Tower filed a motion to compel appraisal and to dismiss or stay, and DKS filed a motion to dismiss. On June 6, 2011, plaintiffs filed their opposition to Tower's motion to compel appraisal and opposition to DKS's motion to dismiss, and Tower filed its opposition to plaintiffs' motion to remand. On June 13, 2011, plaintiffs filed their reply in support of their motion to remand, Tower filed its reply in support of its motion to compel appraisal, and DKS filed its reply in support of its motion to dismiss. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiffs allege that they own a home located at 501 N. Stanley Ave. Los Angeles, CA 90036. Compl. ¶ 17. Plaintiffs allege that they purchased homeowners insurance from Tower, under Policy No. HOS2860421 ("the policy"), which went into effect in August 2008. Id. Plaintiffs maintain that they timely paid all premiums. Id. at ¶ 18.

In August 2009, plaintiffs assert, they noticed water bubbling up in front of their residence, and contacted a plumber immediately. Id. at ¶ 20. Plaintiffs allege that the plumber arrived at plaintiffs' residence to repair the broken pipe on August 23, 2009, and noticed that the "ruptured pipe had caused saturation on the wall of the subbasement located under the kitchen." Id. Plaintiffs state that the plumber turned off the water, and plaintiffs contacted a drying company as well as reporting this water damage to Tower. Id. at ¶ 20-21.

On September 18, 2009, plaintiffs allege, Tower representatives sent plaintiffs a letter confirming that Tower had received plaintiffs' claim, and that the claim had been assigned to Pamela Shaver ("Shaver"). Id. at ¶¶ 21-22. According to plaintiffs, a Tower claims adjuster named Cody arrived at their home "shortly thereafter" and "noticed cracks on the wall and floor separation which he ascertained were caused by the recent water loss." Id. at ¶ 23.

Plaintiffs state that on November 16, 2009, the first consulting firm engaged by Tower, A.G.I., produced a report detailing the property damage as well as repairs necessary to restore plaintiffs' property to its pre-leak conditions. Id. at ¶ 25. Tower

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 11-4031 CAS(PJWx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | ZACHARY MEDOW; ET AL. v. TOWER INSURANCE COMPANY OF NEW YORK; ET AL. | | |

allegedly sent this report to GE Construction, who, based on A.G.I.'s report, estimated a total cost of $415,708.15 to repair the damages. Id.

Instead of paying the policy benefits due based on GE's figures, Tower allegedly hired another construction firm, Emercon Construction, to produce a repair estimate based on A.G.I.'s report. Id. at ¶ 26. Plaintiffs allege that Emercon estimated the damages to be $394,219.93. Id. Plaintiffs contend that Tower told plaintiffs to move out of their home during the repair of the property and that the policy would pay for plaintiffs' rental costs. Id. at ¶ 27. One week prior to plaintiffs' move-in date, Tower allegedly informed plaintiffs that there was a problem with the insurance payment. Id. According to plaintiffs, this was the first time Tower told plaintiffs their rent would not be paid and repairs would not commence as planned. Id.

Plaintiffs allege that on January 19, 2010, DKS[2] adjuster Amber Howe ("Howe") sent them a letter stating that Tower and DKS were continuing investigation of the claim. Id. at ¶ 28. In reality, plaintiffs maintain, DKS was "working with Tower to delay the resolution of the claim until acquisition of an estimate that would minimize the loss caused by the waterline leak at [plaintiffs'] residence." Id.

According to plaintiffs, Tower, with DKS, continued to hire new consulting firms and request multiple reports in an effort to obtain the lowest possible repair estimate. Id. at ¶ 29. Eventually, on November 12, 2010, Tower allegedly accepted an estimate of $34,885.56 produced by consultant Dr. Wren of Exponent Inc., which was less than ten percent of the original estimate provided by Tower consultants. Id. at ¶ 34.

Plaintiffs proffer that, as a result of Tower's misconduct, they suffered emotional distress and lived in uncertainty about the safety of their home for over a year and a half. Id. at ¶ 37. Plaintiffs also claim to have been harassed by collection telephone calls from at least one of Tower's consultants, A.G.I., for Tower's failure to pay. Id.

---

[2] Plaintiffs allege that DKS Claims Services is an independent claims adjuster that worked together with Tower to mislead plaintiffs. Mot at 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 11-4031 CAS(PJWx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | ZACHARY MEDOW; ET AL. v. TOWER INSURANCE COMPANY OF NEW YORK; ET AL. | | |

### III. MOTION TO REMAND

#### A. Legal Standard

A motion for remand is the proper procedure for challenging removal. Remand may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. See 28 U.S.C. § 1447(c). The Court strictly construes the removal statutes against removal jurisdiction, and jurisdiction must be rejected if there is any doubt as to the right of removal. See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). The party seeking removal bears the burden of establishing federal jurisdiction. See Prize Frize, Inc. v. Matrix, Inc., 167 F.3d 1261, 1265 (9th Cir. 1999). The defendant also has the burden of showing that it has complied with the procedural requirements for removal. Judge William W. Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 2:609 (The Rutter Group 2007).

Removal is proper where the federal courts have original jurisdiction over an action brought in state court. 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1332(a), the federal courts have original jurisdiction over state law actions only where the amount in controversy exceeds $75,000 and the action is between parties of diverse citizenship.

An exception to the requirement of complete diversity exists where it appears that a plaintiff has fraudulently joined a "sham" non-diverse defendant. Judge William W. Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial § 2:670 (The Rutter Group 2005). If a court finds fraudulent joinder of a "sham" defendant, it may disregard the citizenship of the "sham" defendant for removal purposes. Id. "Fraudulent joinder" is a term of art, and requires no proof of scienter on the part of the plaintiff. Id. ¶ 2:671. Instead, a non-diverse defendant is said to be fraudulently joined where "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).

"[C]ourts generally employ a presumption against fraudulent joinder." Diaz v. Allstate Ins. Group, 185 F.R.D. 581, 586 (C.D. Cal. 1998) (citations omitted). Accordingly, "[t]he burden of proving a fraudulent joinder is a heavy one. The removing party must prove that there is absolutely no possibility that the plaintiff will be able to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**　　　JS-6

| Case No. | CV 11-4031 CAS(PJWx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | ZACHARY MEDOW; ET AL. v. TOWER INSURANCE COMPANY OF NEW YORK; ET AL. | | |

establish a cause of action against the in-state defendant in state court . . . ." Green v. Amerada Hess Corp., 707 F.2d 201, 205 (5th Cir. 1983) (citations omitted); see also Dodson v. Spiliada Mar. Corp., 951 F.2d 40, 42 (5th Cir. 1992) ("We do not decide whether the plaintiff will actually or even probably prevail on the merits, but look only for a possibility that he may do so. If that possibility exists, then a good faith assertion of such an expectancy in a state court is not a sham . . . and is not fraudulent in fact or in law.") (citations and internal quotation marks omitted); Good v. Prudential Ins. Co. of Am., 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998) ("[T]he defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant.") (citing Dodson, 951 F.2d at 42). In accordance with this high standard, courts must resolve all issues of fact and all ambiguities in the law in favor of the non-removing party when deciding whether fraudulent joinder exists in a given case. Dodson, 951 F.2d at 42; see also Kruso v. Int'l Tel.& Tel. Corp., ITT, 872 F.2d 1416, 1426 (9th Cir.1989) (finding that a party is deemed to have been joined "fraudulently" if, "after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned."). Further, the court may consider "affidavits or other evidence (presented by either party) on the issue of whether a particular defendant's joinder is sham or 'fraudulent.'" Schwarzer ¶ 2:681 (citing W. Am. Corp. v. Vaughan Basset Furniture, 765 F.2d 932, 936 n.6 (9th Cir. 1985)).

## IV.　DISCUSSION

　　Plaintiffs move to remand on the ground that DKS is not a fraudulently-joined defendant and therefore there is not complete diversity of citizenship.

　　Plaintiffs contend that, "[w]hile defendants are correct that an agent of a disclosed principal cannot be held personally liable for breach of contract or breach of the implied covenant of good faith and fair dealing because they are not parties to the contract, it is simply incorrect that disclosed agents of an insurer can never be held personally liable for action taken within the scope of their agency." Mot. at 11. Plaintiffs argue, based on Younan v. Equifax, Inc., 111 Cal. App. 3d 498 (1980), that "an insurer's agents can be held personally liable even though not parties to an insurance contract, where they have committed some independent tort against the insured." Id. According to plaintiffs, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**     JS-6

| Case No. | CV 11-4031 CAS(PJWx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | ZACHARY MEDOW; ET AL. v. TOWER INSURANCE COMPANY OF NEW YORK; ET AL. | | |

claims they allege against DKS are not breach of contract or breach of the implied covenant of good faith and fair dealing, but independent fraud and conspiracy claims. Id. Plaintiffs maintain that defendants' primary case for support, Icasiano v. Allstate Ins. Co., 103 F. Supp. 2d 1187 (N.D. Cal. 2000), is "inapposite because it applies to employees of an insurer, not an independent third party claims adjusting company." Id. at 12.

Plaintiffs maintain that defendants' contention that Tower alone, not DKS, retained all of the experts, is contradicted by its own removal papers. Reply at 2. Additionally, plaintiffs argue that "Icasiano specifically differentiated the facts there from the facts in Younan where 'two separate entities involved in the insurance business conspired together to defraud the plaintiff.'" Id.; see Icasiano, 103 F. Supp. 2d at 1190. Plaintiffs argue that the instant case is analogous to Younan, because Tower and DKS are two separate entities that "conspired to defraud them by helping to select and induce a local expert to prepare a report that would underpay benefits due to the Medows under their policy." Reply at 2.

Defendants argue that, while Younan does carve out an exception to the rule of agent nonliability, the exception applies only to breach of duties that "attach over and above the terms of the [insurance] contract." Opp. at 2, citing 111 Cal. App. 3d at 511. According to defendants, Younan is distinguishable from the instant action because the agent in Younan had "independently arranged an alleged sham medical examination of the insured and misrepresented the purpose of the examination, breaching the agent's 'duty . . . *independent* of the [insurance] contract . . .'" Opp. at 2. Defendants contend that "Tower *alone* retained all of the experts to evaluate the claimed damage to the plaintiffs' house, and DKS performed *only* the standard site-investigation and document-collection tasks that were part of Tower's duties under the insurance contract and its implied covenant of good faith and fair dealing." Id.

Defendants argue that plaintiffs rely on an erroneous analysis of Icasiano, as Icasiano does not "limit the rule of non-liability to employees" but rather "highlight[s] that the alleged fraudulent conduct in Younan was distinct from 'the process of administering a claim.'" Id. at 3; see Icasiano, 103 F. Supp. 2d at 1190. Defendants contend that "Icasiano thus affirmed that an employee *or agent* cannot be sued individually where the asserted basis of liability is a breach of 'the insurance company['s]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**                                JS-6

| Case No. | CV 11-4031 CAS(PJWx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | ZACHARY MEDOW; ET AL. v. TOWER INSURANCE COMPANY OF NEW YORK; ET AL. | | |

. . . duty to administer [the insured's] claim.'" Opp. at 3; see Icasiano, 103 F. Supp. 2d at 1190.

The Court finds that defendants have not met their heavy burden to demonstrate fraudulent joinder. See Green, 707 F.2d 201, 205 (5th Cir. 1983). "An agent of an insurance company is generally immune from suits brought by claimants for actions taken while the agent was acting within the scope of its agency . . . An agent cannot be held liable for a conspiracy to violate a duty peculiar to the insurance company. As long as the duty is owed by the insurance company only, and regardless of whether it derives from contract or tort, the insurance company's agents cannot be held liable for conspiring to violate that duty." Icasiano, 103 F. Supp. 2d at 1189-90 (citations omitted). Under California law, agent nonliability generally applies to insurer's own employees. See Moreno v. Allstate Ins. Co., 2002 WL 31133203, at *2, n.3 ("Younan does not stand for the broader proposition that an insurer's own employees can be independently liable for misrepresentation allegedly made on behalf of the insurer.").

Nevertheless, "[a] cause of action for conspiracy will lie against agents and employees of insurers even though the former are not parties to the agreement of insurance when they join the insurer in a conspiracy to defraud the insured. As such, they are jointly liable with those with whom they conspire to commit the tort." Younan, 111 Cal. App. 3d at 511.

In the context of removal, the Court must resolve all issues of fact and all ambiguities in the law in favor of the non-removing party when deciding whether fraudulent joinder exists in a given case. Dodson, 951 F.2d at 42; see Schwarzer, et al. California Practice Guide: Federal Civil Procedure Before Trial § 2:2458. The Court finds that plaintiffs do not claim that DKS acted as an "insurance agent acting solely as the representative of insurer in the course of handling a claim." See Icasiano, 103 F. Supp. 2d at 1190. Rather, plaintiffs aver that "two separate entities involved in the insurance business conspired together to defraud the plaintiff[s]." See Icasiano, 103 F. Supp. 2d at 1190. Accordingly, the Court finds that plaintiffs' fraud and conspiracy claims against defendants fall into the Younan exception. See also Gopp v. Legion Ins. Co., 2001 WL 1112155 (N.D. Cal Sept. 10, 2001) (finding that the plaintiff pleaded valid claims for fraud and conspiracy against an independent adjustor to an insurance company, where he alleged that adjustor made affirmative misrepresentations regarding plaintiff's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      JS-6

| Case No. | CV 11-4031 CAS(PJWx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | ZACHARY MEDOW; ET AL. v. TOWER INSURANCE COMPANY OF NEW YORK; ET AL. | | |

claim after fire damage to his property). Moreover, the Court finds that plaintiffs's fraud and conspiracy claims are not based on the contract of insurance or the duty of good faith and fair dealing. See Younan, 111 Cal. App. 3d 498 at 510-11 ("Contrary to [the] situation described in Gruenberg . . . plaintiff in his third cause of action does *not* base his claim on any duty of good faith and fair dealing . . . Rather, plaintiff's claim here is that all defendants conspired to commit certain wrongful acts against him and that such acts were fraudulent and unprivileged.").

As defendants stated during oral argument, "[i]n determining whether a defendant's joinder is 'fraudulent,' courts properly consider the allegations of the complaint and facts presented by defendant in its notice of removal." Judge William W. Schwarzer, et al. California Practice Guide: Federal Civil Procedure Before Trial § 2:2456 (The Rutter Group 2011); see McCabe, 811 F.2d at 1339 ("The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent."); Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998) (same). "The district court may also consider *affidavits* or *other evidence* (presented by either party) on the issue of whether a particular defendant's joinder is 'sham' or 'fraudulent.'" Schwarzer, et al. California Practice Guide: Federal Civil Procedure Before Trial § 2:2456.

Having considered all the evidence submitted by defendants, including the Declaration of Michael Birney attached to the Notice of Removal, the Court finds that the evidence is ambiguous with regard to the role of DKS. While the declaration maintains that "Tower itself, without involving DKS, engaged all three experts and requested all their reports," it also states that Tower's inside adjusters retain experts "[b]ased on information provided to Tower by outside adjusters." Decl. at ¶ 4, 12.

Plaintiffs allege that DKS is an independent outside adjuster, that Tower "cycled through a series of claims adjusters" and fired an adjuster when it "refused to partake in its unlawful scheme to reduce benefit payments," and that Tower and DKS conspired to defraud plaintiffs by "helping to select and induce a local expert to prepare a report that would underpay benefits due to [the plaintiffs] under their policy." Compl. ¶ 6; Mot. at 1, 3; Reply at 2. The Court does not find defendants' evidence inconsistent with plaintiffs' allegations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  JS-6

| Case No. | CV 11-4031 CAS(PJWx) | Date | June 27, 2011 |
|---|---|---|---|
| Title | ZACHARY MEDOW; ET AL. v. TOWER INSURANCE COMPANY OF NEW YORK; ET AL. | | |

The Court finds that defendants fail to "prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court." Green v. Amerada Hess Corp., 707 F.2d 201, 205 (5th Cir. 1983).

## V. CONCLUSION

Federal courts have jurisdiction only where there is complete diversity: the plaintiff's citizenship must be diverse from that of each named defendant. 28 U.S.C. §§ 1332(a), 1332(c)(1).[3] Because defendant DKS is not a sham defendant, complete diversity is destroyed. Accordingly, the Court finds that this court does not have jurisdiction to adjudicate the matters of this case.

In accordance with the foregoing, the Court GRANTS plaintiffs' motion to remand. The Court also DENIES DKS's motion to dismiss as moot and DENIES Tower's motion to compel appraisal and to dismiss as moot.

IT IS SO ORDERED.

| | 00 | : | 08 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[3] The Court finds that there is no contention by the parties that there is, nor could there be, subject matter jurisdiction pursuant to § 1331. A claim "arises under" the laws of the United States, for purposes of construing 28 U.S.C. § 1331, only if "a well-pleaded complaint establishes either that (1) federal law creates the cause of action or that (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd., 463 U.S. at 27-28.